46   504
75   123

AMOS H. ALLING AND ANOTHER *vs.* WILLIAM E. BURLOCK AND ANOTHER, ADMINISTRATORS.

In 1843 S & P conveyed certain land to a town to be used only for a highway. The town formally accepted the deed but did not open the land for a highway until several years later. In 1863 B, who had acquired whatever title remained in S & P, conveyed the land by warranty deed to the plaintiffs, who occupied it until 1876, when the town entered upon it and opened and worked it for a highway, having previously obtained an injunction against any use of the land by the plaintiffs that would interfere with their use of it for a highway. In an action against B for breach of his warranty, it was held—

1. That the town by its deed took the fee of the land and not a mere easement.
2. That the town was capable of taking such a title for such a purpose.
3. That the proceedings of the town in asserting its rights in court, and taking possession of the land for a street, constituted an eviction.

ACTION OF COVENANT upon the covenants of seizin and warranty in a deed; brought to the Superior Court in New Haven County, and tried to the court on the general issue, with notice, before *Carpenter, J.*

The deed in question was made by Thomas Burlock to the plaintiffs, in October, 1863. He died in 1865 and the defendants were administrators of his estate, and had immediately after settled it, with an order limiting the time for presenting claims against his estate. The land conveyed was in the borough of Birmingham in the town of Derby. The deed contained covenants of seizin and warranty, and of freedom from encumbrances. The plaintiffs took possession of the land under the deed and had occupied it until they were dispossessed of a portion of it by the town of Derby and borough of Birmingham in 1876.

Twenty years prior to the conveyance by Burlock to the plaintiffs the land embraced in that deed had belonged to Fitch Smith and Anson G. Phelps, and they, on the 30th of August, 1843, had conveyed the portion of it now in question, with other lands, to the town of Derby by a quitclaim deed. The material part of this deed is as follows:—

"Do remise, release, and forever quit claim unto the said town of Derby, and unto their assigns forever, all the right, title, interest, claim and demand whatsoever, which we the said releasors have or ought to have, in or to certain lands for public streets and highways situated in the village of Birmingham, to wit: [describing them]. For more particulars relative to the above named streets, see map in the office of the Birmingham Water Works. To have and to hold the premises, with all the appurtenances, unto the said releasees and their assigns forever, for public streets and highways only, so that neither we the releasors, nor our heirs, nor any other person under us or them, shall hereafter have any claim, right, or title, in or to the premises, or any part thereof; but therefrom we and they are by these presents forever barred and excluded."

Among the streets mentioned was "Third Street, forty-eight feet wide," which embraced the land in question. This

street was opened and worked but a part of its length as laid out on the map—the land in question being that part so left unopened; and it so remained unopened until the year 1876. The deed was formally accepted by the town and placed on record.

While the plaintiffs were in peaceable possession of the premises conveyed to them by Burlock, the town of Derby and borough of Birmingham, (the borough claiming an interest in the extension of Third street, by virtue of its charter and through the town of Derby,) in the year 1872 brought to the Superior Court for New Haven County a bill in equity against the plaintiffs with regard to the strip of land in the line of Third street extended, and on the bill such proceedings were had that the plaintiffs were enjoined from using the strip of land for any purpose which would interfere with the use of the same for a highway. Subsequently, in January, 1876, the town of Derby and the borough of Birmingham took possession of the strip under the deed from Smith and Phelps to the town of Derby, improved, worked and graded the same for a highway, and the same has ever since been used and occupied by the public for the purposes of a highway. And thereby, and in that way only, were the plaintiffs evicted.

Upon these facts the plaintiffs claimed to recover for a breach of the covenant of warranty. The defendants claimed that the facts did not constitute a breach of the covenant of warranty, but at most a breach of the covenant against incumbrances, a claim for which should have been presented against the estate of Burlock within the six months allowed for the presentation of claims. The court overruled the claim of the defendants, and rendered judgment for the plaintiffs; and the defendants moved for a new trial for error in this ruling of the court.

*W. B. Wooster* and *D. Torrance*, in support of the motion.

1. There can be no eviction where land is taken merely for a public highway. All that the borough or town have thus far done is to open and work such a highway. No claim

to any further right or interest in the soil has been made. A public highway is a mere easement and nothing more. *Hubbard* v. *Norton*, 10 Conn., 431. The highway across the land of the plaintiffs is therefore an *incumbrance* only, and does not affect the seizin or title. "An incumbrance may be defined to be every right to or interest in land, which may subsist in a third person to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." Rawle on Covenants, (4th ed.,) 94. It is not the object of the general covenant of warranty to protect against mere easements or incumbrances. The rule of damages in actions upon the warranty is the *value of the land at the time of the eviction.* *Sterling* v. *Peet*, 14 Conn., 253. How is such a rule applicable in a case where the injury complained of is the existence of an easement or incumbrance? And how can a person owning the fee be evicted by the entry of another for the purpose of drying a net, or digging turf, or taking water, or of passing over the soil? The title—the seizin—is not affected by all this, but only the mode of enjoyment. These incumbrances are guarded against by a specific covenant. The existence of an easement is not a breach of the covenant of general warranty. The object of the covenant of warranty is to protect the title —to guard against *a want of seizin or of the power and right to convey*, and not against mere incumbrances. Rawle on Covenants, (4th ed.,) 79, 104; *Butler* v. *Gale*, 27 Verm., 742; *McMullin* v. *Wooley*, 2 Lansing, 394; *Dobbins* v. *Brown*, 12 Penn. S. R., 75; *Mitchell* v. *Warner*, 5 Conn., 497.

2. The deed of Smith and Phelps conveyed to the town an easement, and nothing more. It is a quitclaim deed, and in its construction "the court will look at its terms, in connection with the situation of the parties and the objects they had in view." *Griswold* v. *Allen*, 22 Conn., 99. Those parties were the town of Derby, and the founders of a village within the limits of that town. Both parties to the deed must be presumed to have known the law relating to highways. The town desired to obtain a right to the highways, so that it might control, as it was compelled to work them.

The resolution passed by the town in 1842 declares the streets named in it to be public highways, "on condition that the proprietors of said roads convey the same to the town," and the deed was given in pursuance of the vote. All that the town desired to obtain, and all that Smith and Phelps desired to part with, was *the public right of way.* Does the deed, read in the light of the circumstances under which it was given, convey anything more? If it does, what is the estate conveyed? It is either *a mere easement or a fee.* There is no middle ground. Strike from it the words "for public streets and highways," and you have a quitclaim of the fee which the releasors confessedly had at that time. Such effect should be given to those words as the parties intended should be given to them. They should be read as conveying an easement, and nothing more. Any other construction is contrary to the intent of the parties, and is attended with a great deal of difficulty. Could the town of Derby take more than an easement? If so, it must be because this quasi corporation is capable of taking and holding any gift of land or anything else for public purposes. And yet the legislature has taken the trouble to confer this power upon towns in special cases. Gen. Statutes, p. 87. If this deed conveyed the fee to the town *for highways only*, to whom does the land revert in case of the abandonment of the highway? Would it not revert to the plaintiffs or their assigns? If so, why pay them damages equal to the value of the land of which they again become the owners? Again, can the town of Derby use the land for other purposes than for highways? May not the plaintiffs use it for every purpose not inconsistent with its use as a highway? Who has a right to work the mines or quarries underneath the soil, and to put the land to the many uses it is capable of, aside from its use for highways? Can the town sell the fee subject to the public use for highway purposes? The construction contended for by the plaintiffs, that this deed passed the fee to the town, is untenable. Neither the case of *Taylor* v. *Public Hall Co.*, 35 Conn., 430, nor that of *Derby* v. *Alling*, 40 Conn., 410, nor any other case in our books, furnishes any authority for such a construction. On

the contrary, to hold that an easement, and an easement only, was conveyed, is consonant with the intention of the parties, places these highways with the other highways in town, and is attended with no difficulties or absurdities.

*S. E. Baldwin* and *J. W. Alling*, contra.

1. The town of Derby took the fee of the land under the deed of Smith and Phelps, and not a mere easement. *Derby v. Alling*, 40 Conn., 410, 437 ; *Taylor* v. *Public Hall Co.*, 35 id., 430; *McDunn* v. *City of Des Moines*, 34 Iowa, 467; *S. C.*, 39 id., 286.

2. The proceedings of the town and borough in obtaining an injunction against the occupancy of the land by the plaintiffs, with the taking of possession, and the opening and working of the land for a public street, constitute an eviction. *Butler* v. *Gale*, 27 Verm., 745; *Clark* v. *Estate of Conroe*, 38 id., 470; *Russ* v. *Steele*, 40 id., 310; *Budger* v. *Pierson*, 1 Lansing, 481; *Rea* v. *Minkler*, 5 id., 196; *Wilson* v. *Cockran*, 46 Penn. S. R., 229; *Kellogg* v. *Malin*, 50 Misso., 501; *Beach* v. *Miller*, 51 Ill., 212; *Burk* v. *Hill*, 48 Ind., 56; Rawle on Covenants (4th ed.), 100, 103, 143, 181; 1 Smith's Lead. Cas., 161.

LOOMIS, J. This is an action upon a general covenant of warranty, brought by the warrantees against the administrators of Thomas Burlock, deceased, the warrantor.

The breach complained of arises out of the following facts:— Smith and Phelps, the former owners of the land in question, on the 30th of August, 1843, by quitclaim deed, conveyed it to the town of Derby, "to hold for public streets and highways." The town formally accepted the deed, and it was duly recorded; but the land for some years remained unappropriated to the purposes mentioned. And afterwards Burlock, having obtained whatever title remained in Smith and Phelps, on the 3d of October, 1863, conveyed the same land to the plaintiffs, by warranty deed, containing the usual covenants of seizin, warranty, and freedom from incumbrances, and the plaintiffs took full possession under their deed, and

while in possession the town of Derby and the borough of Birmingham, claiming the land for highway purposes, under the deed to the town, instituted proceedings in equity, which resulted in a decree by the Superior Court, pursuant to advice from this court, enjoining the plaintiffs from using the land for any purposes which would in any manner interfere with the use of the same for a public highway. See *Town of Derby* v. *Alling*, 40 Conn., 410.

After this, in January, 1876, the town and borough took possession under the deed to the town, and improved, worked and graded the land for a public highway, and it has ever since been used for that purpose, and, in the language of the finding, "thereby and in that way only were the plaintiffs evicted and ousted from the possession of said land."

Do these facts constitute a breach of the general covenant of warranty, or simply of the covenant against incumbrances?

The distinction involved in this question is all important. If the latter alternative is true, the plaintiffs are now without remedy either in this suit or any other; for the covenant against incumbrances, being broken instantly, became the mere personal obligation of the warrantor, which, not having been prosecuted against him while living, nor against his estate since his decease, has now become barred and lost.

An incumbrance may be defined to be every right to or interest in land which may subsist in a third person to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." Rawle on Covenants (4th ed.), p. 94.

In an action for the breach of this covenant the rule of damages is generally the diminished value of the premises by reason of the incumbrance. But the scope and extent of the covenant of warranty is very different. It is something more than a covenant for quiet enjoyment. It is a covenant to defend not the possession merely, but the land and the estate in it. It operates *in futuro*, and can only be broken by eviction, actual or constructive, and when so broken the damages are the value of the land at the time of the eviction.

The defendants claim that the deed to the town left the fee

still in the grantors, and had no effect whatever on the title, except the imposition of an easement in favor of the public; and that the case now stands precisely as it would had an ordinary highway existed at the time of the warranty.

If the premises are true we admit the correctness of the conclusion, for in this state an ordinary public highway is considered a mere easement, the fee remaining in the original owner, and constitutes a breach of the covenant against incumbrances. *Hubbard* v. *Norton*, 10 Conn., 431.

But, however satisfactory the reasoning in support of the above claim might otherwise appear, we do not feel at liberty to treat the question as an open one in this state.

In *Taylor* v. *Public Hall Co.*, 35 Conn., 430, the legal capacity of a town to take and hold the fee of land for highway purposes was distinctly recognized. The court, in construing the deed referred to in that case, said (p. 432): "This deed conveys something more than an easement. * * So long as the premises continue to be used for a highway the town has a complete title, in the enjoyment of which it cannot be disturbed, not only to a right of way, but to the fee of the land."

And in the recent case of *Derby* v. *Alling*, 40 Conn., 410, this court, SEYMOUR, C. J., giving the opinion, cited the above authority, and gave a similar construction as to the effect of the identical deed now in question, and held that the town was an appropriate trustee to hold the title to the streets for the purposes contemplated.

The only remaining question to be considered relates to the eviction. So far as this is a matter of fact, the court has found affirmatively an actual eviction and ouster of the plaintiffs, but with an added qualification, that it was only in the way described. If therefore the mode as set forth could not as matter of law amount to an eviction, there would be no breach of the covenant in suit. But we think the facts as stated, taken in connection with the construction we have given to the deed, will be found to contain every essential element of a legal eviction. It was not a mere disturbance of the plaintiffs' possession occasioned by the public using

this right of way. But before the way was ever open to public travel the town asserted its paramount title, and that too in a hostile manner, through proceedings in court against the plaintiffs, whereby they were rightfully enjoined against appropriating the premises to their individual use in the manner contemplated.

For these reasons a new trial is not advised.

In this opinion the other judges concurred, except CARPENTER, J., who having tried the case in the court below, did not sit.