SYDNEY ROSENBLUM ET AL. *v.* WARREN L. EISENHAUER
ET AL.

SUPERIOR COURT          HARTFORD COUNTY          FILE NO. 166289

Memorandum filed June 9, 1971

*Lester  Katz,* of  Hartford,  for  the  plaintiffs.

*Butler, Volpe & Sacco,* of Hartford, for the named defendant.

No appearance for the defendant Chellstrop.

RUBINOW, J.  On February 8, 1965, the plaintiffs by assignment obtained an option to buy, in Farmington, a tract of land hereinafter referred to as the Barnett tract.  The option included the following clause: "The seller agrees to permit the buyer, his heirs or assigns, to remove from the adjacent property of the seller, without cost but at the buyer's expense a sufficient quantity of fill to bring the herein described property to a level acceptable to the buyer and the Town of Farmington."  By agreement dated March 30, 1965, the option was amended to provide, in effect, that it could be exercised up to September 3, 1965.

On June 28, 1965, the Connecticut Sand and Stone Corporation, hereinafter referred to as Connecticut Sand, bought, in Farmington, a tract of land hereinafter referred to as the Connecticut Sand parcel. This parcel was "the adjacent property of the seller" referred to in the plaintiffs' option.  The deed to Connecticut Sand contained a clause "excepting and reserving" from the land conveyed to Connecticut Sand the "parcel of land more particularly described in" the option of the plaintiffs, and a clause stating that the premises conveyed "are subject to:  . . . (5) All the terms, conditions, covenants, agreements, drainage rights and rights of way in the aforesaid Option Agreement."  After this conveyance, the date for the exercise of the option was extended by the plaintiffs and the sellers to permit the option to be exercised after September 3, 1965.

On May 6, 1966, in accordance with the option as thus extended, the defendants conveyed the Barnett

tract to the plaintiffs by warranty deed containing the usual covenants of title, as follows: "And Also, they the said grantors do for themselves their heirs, executors, administrators, successors and assigns, covenant with the said grantees their heirs, successors and assigns, that at and until the ensealing of these presents, they are well seized of the premises, as a good indefeasible estate in fee simple; and have good right to bargain and sell the same in manner and form as is above written; and that the same is free from all incumbrances whatsoever, except as above stated. And Furthermore, we the said grantors do by these presents bind themselves [sic] and their [sic] heirs, successors and assigns forever to warrant and defend the above granted and bargained premises to themselves the said grantees their heirs, successors and assigns, against all claims and demands whatsoever, except as above stated."

In the deed of the Barnett tract, the following words appear after the description of that parcel: "Together with . . . 4. The right in favor of the grantees herein their heirs and assigns to remove from the adjacent property, formerly of the Farmington River Company on the east (which was conveyed to the Connecticut Sand and Stone Corporation by warranty deed dated June 28, 1965) without cost to the grantors or their heirs and assigns, but at the expense of the grantees herein their heirs and assigns, a sufficient quantity of fill to bring the herein conveyed premises to a level acceptable to the grantees herein their heirs and assigns, and the Town of Farmington."

On December 5, 1966, a controversy having arisen over the plaintiffs' right to remove fill from the Connecticut Sand parcel, the plaintiffs instituted an action in the Superior Court against the defendants and Connecticut Sand, seeking, inter alia, a declaratory judgment with respect to that right.

*Rosenblum* v. *Chellstrop*, 29 Conn. Sup. 210. By judgment rendered on March 3, 1969, the court found that Connecticut Sand acquired its parcel free of any rights of the plaintiffs under any extension of the option agreement beyond September 3, 1965. The basis of the court's ruling was that September 3, 1965, was the last day for exercising the option in effect on the day Connecticut Sand bought its parcel, and that the option extensions the plaintiffs obtained for a period after September 3, 1965, were not binding on Connecticut Sand because Connecticut Sand "took subject to any previously created servitudes of which it had notice . . . but it did not take subject to any of which it had no notice, much less, any which had not even been created."[1]

On June 13, 1970, the plaintiffs instituted this action against the grantors of the Barnett tract. After pleadings had been filed, the plaintiffs moved for summary judgment on the basis of (a) admissions in the pleadings that established the facts hereinbefore set forth with reference to the options and the conveyances, and (b) an affidavit of the plaintiff Barnett which referred primarily to the decision in *Rosenblum* v. *Chellstrop*, supra.

The complaint is in two counts. The first count alleges that the defendants "made it impossible" for the plaintiffs to realize the benefits of the provisions in the option concerning the removal of the fill. On this count, the primary reliance of the plaintiffs is on the decision in *Rosenblum* v. *Chellstrop*, supra. The decision in that action, however, does not show ipso facto that there is "no genuine issue as to any material fact" (Practice Book § 303) in the first count. To be sure, the judgment establishes that

---

[1] The statement of facts has been derived from admissions in the pleadings, undisputed declarations in the affidavits filed in connection with the motion for summary judgment, and the file in *Rosenblum* v. *Chellstrop*, 29 Conn. Sup. 210.

it is impossible for the plaintiffs to have the benefit of the fill rights in the option, but that is not the same as establishing that the defendants brought about that impossibility. The opposing affidavit of April 16, 1971, of the defendant Eisenhauer recites that Connecticut Sand was "fully informed" that certain rights to remove fill, as set forth in the plaintiffs' option, would be included in the deed of the Connecticut Sand parcel. Furnishing this notice and including in the deed the reference to the option are significant of an intent to protect the rights of the plaintiffs, since the plaintiffs' option was not then of record. The foregoing considerations, coupled with the absence in either the complaint or the Barnett affidavit of reference to any specific conduct of the defendants that "made . . . impossible" the realization of the plaintiffs' fill rights in the option, require that the motion for summary judgment be denied with respect to the first count.

The second count states that the defendants have broken the covenants in their deed of May 6, 1966, to the plaintiffs. The usual covenants in a Connecticut warranty deed are four, as in the deed to the plaintiffs: (1) the covenant of seisin; (2) the covenant of the right to convey; (3) the covenant against encumbrances; and (4) the covenant of warranty. *Mitchell* v. *Hazen,* 4 Conn. 495, 510. Ordinarily, the covenant of seisin and the covenant of the right to convey are synonymous. *Mitchell* v. *Hazen,* supra, 511; C. H. Smith, Survey of the Law of Real Property, p. 187 (1956). They "guarantee to the grantee that the grantor owns the estate which the deed purports to convey." Smith, loc. cit. The covenant against encumbrances is a guarantee that there is no right or interest in the land conveyed which "may subsist in a third person to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance." *Alling* v.

*Burlock,* 46 Conn. 504, 510; see *Reed* v. *Stevens,* 93 Conn. 659, 663. " 'The covenant of warranty is a contract by which the grantor of land undertakes to protect the land granted from all lawful claims and demands existing at the time of the grant, and the contract is made not only with his immediate grantee but with whomsoever may become the owner of the land by a title derived through the grantee. . . . It is not necessarily an undertaking that there is no incumbrance on the land at the time, but it is an undertaking that the purchaser and his assigns shall at all times enjoy the land free from all such incumbrances.' " *Reed* v. *Stevens,* supra, 662.

In the deed to the plaintiffs, the covenant of warranty by its terms applies to "the above granted and bargained premises." The other covenants, by their terms, apply to "the premises." If, in the covenants of title in the plaintiffs' deed, the word "premises" or the words "above granted and bargained premises" as a matter of law include the fill rights described in that deed, the judgment in *Rosenblum* v. *Chellstrop,* 29 Conn. Sup. 210, entitled the plaintiffs to have their motion for summary judgment granted. See *Ensign* v. *Colt,* 75 Conn. 111, 116 ("A judgment, the necessary effect of which is to deprive the plaintiffs of the power of beneficial enjoyment of a part of the granted premises, is a constructive eviction"). On the other hand, if there is a question whether those words in the covenants of title include the fill rights, the motion for summary judgment must be denied. "Summary judgment procedure is designed to dispose of actions in which there is no genuine issue as to any material fact." *Rathkopf* v. *Pearson,* 148 Conn. 260, 263.

In those covenants of title, the word "premises" is used, first, in connection with the word "seized" and the words "in fee simple." "Seized," in the law of real property, is a word of art, referring to the

ownership of freehold interests in land, conveyed in ancient times only by livery of seisin. See *Leach* v. *Jay,* 9 Ch. D. 42, 44 (1878) ("seised" is one of the "most technical words in our law . . . [and] has acquired no other meaning than its technical meaning"; therefore a devise of all real estate "of which I may die seised" does not pass land that another was in possession of wrongfully). The words "in fee simple" are likewise words of art in the law of real property. The phrase means "a whole or unlimited estate." *Frank Towers Corporation* v. *Laviana,* 140 Conn. 45, 52. It is the name given to "the largest estate in land." A. Nassau, "Land Titles," 22 Connecticut General Statutes, Annotated (West Ed.), p. 192. These words are, furthermore, not the only ones in the covenants of title that demonstrate their reference to freehold interests in land solely. Thus, the phrases "bargain and sell" and "granted and bargained" are historic talismans in the development of methods of conveying freehold interests. See 1 American Law of Property, pp. 37, 42 (effect of Statute of Enrollments and Statute of Uses upon "bargain and sale" as a conveyancing device). In sum, then, the language of the covenants in the plaintiffs' deed permits the inference that the grantors intended them to apply, not to interests in personal property or even chattels real, but only to freehold interests in real property. Whether that intent is one that is presumed but rebuttable, or whether it is one that is conclusively presumed, it is not necessary to decide in connection with the present motion. It is enough that it is an intent that may be inferred, for, at this stage of the proceedings, if that intent may be inferred, it must be inferred. See *United States* v. *Diebold, Inc.,* 369 U.S. 654, 655 ("On summary judgment the inferences to be drawn from the underlying facts contained in . . . [the relevant] materials must be

viewed in the light most favorable to the party opposing the motion").

This limitation upon the scope of the grantors' covenants of title requires a determination whether there is any material issue of fact concerning the legal rights described by the language regarding the removal of the fill. This determination must be made concerning the language in both the deed and the option, for the references to fill-removal in the deed may be construed either as creating the right originally or as merely referring to an appurtenance created by a previous instrument, i.e. the option. Since the Connecticut Sand parcel had already been transferred at the time of the conveyance of the Barnett tract to the plaintiffs, it did not then lie within the power of the defendants to create a new servitude on the Connecticut Sand parcel. The parties to the deed may, however, have mistakenly assumed that the grantors did have that power. On the other hand, the parties may also have mistakenly assumed that the reference, in the Connecticut Sand deed, to the plaintiffs' option had the effect of subjecting that parcel to fill-removal rights in favor of the plaintiffs, if the plaintiffs exercised their option to purchase the Barnett tract. Under the latter alternative, as previously noted, the parties would have assumed that the instrument that created the fill-removal rights was the option, and those rights passed to the plaintiffs as appurtenances to the Barnett tract and not as the result of the creation of any new rights by the deed.

If the fill-removal language in the deed was intended to create a new interest in the plaintiffs, that interest is of the type commonly designated as a profit a prendre. See *Jo-Mark Sand & Gravel Co.* v. *Pantanella,* 139 Conn. 598, 601; *Merwin* v. *Wheeler,* 41 Conn. 14, 25. A profit a prendre has many of the characteristics of an easement and, like an ease-

ment, may be either appurtenant or in gross. 1 Thompson, Real Property, p. 516 (repl. 1964). When it is in gross, it is often construed to be an estate in land and may be held in fee, for life, or for years. Id., p. 518; see *New Haven* v. *Hotchkiss,* 77 Conn. 168, 175 (estate in fee may be granted by right in gross to remove minerals). When appurtenant, a profit a prendre is regarded as an easement. 1 Thompson, op. cit., p. 526. An easement may "be a freehold or a chattel interest according to its duration, and may be enjoyed in fee, and it may be a base, qualified, or determinable fee, or it may be less than a fee, or even for a term of years." 28 C.J.S. 621, Easements, § 1 (b).

The plaintiffs claim that the use of the phrase "their heirs and assigns" in the fill-removal clause created a fee interest in the plaintiffs. The defendants claim that the absence of any time limitations in the fill-removal clause means that the removal was to be completed within a reasonable time. This conflict in claims as to the meaning of the clause presents an issue of fact. It is not an issue of fact that can be decided on the face of the instrument, for, although the language supports the claim of the plaintiffs, an inquiry naturally arises whether the parties intended that, no matter how long it took, the plaintiffs had an unqualified right to take fill for the specified purpose from the Connecticut Sand parcel. Conceivably, such a right could prevent Connecticut Sand from having the beneficial use of its parcel until the plaintiffs, or their successors, decided that it was time to remove the fill. These surrounding circumstances could be relevant to the question whether the plaintiffs' or the defendants' interpretation is correct. This question of fact is material, since, if the defendants' interpretation is correct, the duration of the profit a prendre, whether in gross or appurtenant, would be limited in time,

would thus not be a freehold interest, and would, therefore, not be included within the interests to which the covenants of title apply.

Similar considerations apply if the fill-removal right is regarded as an appurtenance created when Connecticut Sand took title to its parcel "subject to" the option. There are some differences: the words of limitation are "heirs or assigns" instead of "heirs and assigns," and the fill-removal interest is not expressed in terms of an agreement to convey a right to remove the fill but in terms of an agreement "to permit the buyer . . . to remove . . . a sufficient quantity of fill." These differences do not help the plaintiffs, even if the option, instead of the deed, should be found to be the right-creating instrument. At best, from the standpoint of the plaintiffs, the differences would not add any rights to the rights purported to be created by the deed and, at worst, would militate against the claim that a freehold interest was created in the plaintiffs.

The motion for summary judgment is denied.