DOUBLE I LIMITED PARTNERSHIP ET AL. *v.* PLAN
AND ZONING COMMISSION OF THE TOWN OF
GLASTONBURY ET AL.
(13903)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

Argued December 6, 1990—decision released March 19, 1991

66

*Kathleen Eldergill,* for the appellants-appellees (plaintiffs).

*William S. Rogers,* with whom were *Arthur S. Wells* and, on the brief, *Mark V. Connolly,* for the appellee-appellant (named defendant).

CALLAHAN, J. The named defendant, the town of Glastonbury plan and zoning commission (commission), granted a special permit to the defendant Whit Osgood authorizing the construction of a single family dwelling on a ten acre rear lot.[1] The plaintiffs, Double I Limited Partnership (Double I) and its two general partners, Bruce S. Beck and Daniel Guachione, own property adjacent to Osgood's rear lot and other property within 100 feet of the lot. They appealed the commission's decision to the Superior Court. The Superior Court rejected the plaintiffs' claims that the commission's approval of the rear lot was improper and that the notice provisions of General Statutes § 8-3c (b) violated the plaintiffs' due process rights, and it therefore dismissed the appeal. We affirm the judgment of the trial court.

The material facts are not in dispute. Pursuant to § 6.8 of the zoning regulations of the town of Glastonbury,[2] Osgood applied to the commission for a special

[1] The other defendants are the chairman of the Glastonbury plan and zoning commission and the town clerk of Glastonbury.

[2] Section 6.8 of the zoning regulations of the town of Glastonbury provides:

"6.8.1 AUTHORIZATION: In accordance with the provisions of this section, the Town Plan and Zoning Commission may grant special permits to allow

permit that would allow him to build a single family home on a rear lot. The lot is located on the easterly

the construction of dwellings with permitted accessory buildings on rear lots in residential zones.

"6.8.2 DEFINITION: REAR LOT: A lot which does not meet the frontage requirements of these regulations for the underlying zones.

"6.8.3 RESUBDIVISION LIMITATION: A Section 6.8 Special Permit shall not be granted in conjunction with any rear lot created by the resubdivision of any lot(s) which are part of any subdivision approved after the effective date of this ordinance.

"6.8.4 REQUIREMENTS FOR REAR LOTS: A special permit authorizing single-family dwelling construction on rear lot(s) may only be granted following satisfactory demonstration to the Town Plan and Zoning Commission that the following criteria have been met:

"(a) Construction of dwelling(s) will not impair the health, safety, general welfare of future occupants, abutting landowners; and will not impair future land use, and road layouts anticipated by the Plan of Development.

"(b) A rear lot shall have a minimum area of 80,000 square feet. The Commission may issue a special permit for smaller rear lots of record existing as of October 22, 1973.

"(c) A principal dwelling on a rear lot shall not be located further than 1,000 feet from the street line of the Town street to which access is provided; measured along the centerline of the rear lot access driveway. The Commission may waive the 1,000' driveway limit to allow a rear lot driveway up to 1,500' in length measured along the centerline.

"(d) There shall be a maximum of one single-family dwelling with permitted accessory buildings or uses on a rear lot. The Commission may grant special permits allowing the construction of single-family dwellings on a maximum of two adjacent or contiguous rear lots serviced by a common access drive.

"(e) The owner(s) of each rear lot or lots shall own the fee interest in a right-of-way at least 20 feet wide; provided, however, that the Commission may, in its discretion, waive the requirement of fee-ownership, as long as property over which said right-of-way passes shall have frontage on a Town road in excess of 20 feet over the minimum frontage required in the underlying zone or shall be property to which frontage requirements are not applicable.

"(f) All access driveways serving one or more rear lots shall have a minimum unobstructed width of 20'. All access driveways with an average grade in excess of 8% shall be paved with 2" of compacted bituminous concrete and constructed with appropriate stormwater control to minimize washouts. All access drives shall have a surface base of 10" of compacted bank run gravel or stone. No rear lot access drive shall contain any grade in excess of 15%. The Commission may require additional driveway standards based upon actual field conditions.

side of a portion of Dayton Road that the town of Glastonbury has designated as an abandoned road. The plaintiffs Beck and Guachione own land abutting the westerly side of this same portion of Dayton Road, while the plaintiff Double I owns land within 100 feet of Osgood's rear lot.

Osgood's application stated that he would construct a twenty foot wide paved driveway over the abandoned road to provide access to the lot. The driveway would extend from his lot to the public portion of Dayton Road, a distance of approximately 750 feet. One portion of the abandoned road that would become part of the driveway travels over approximately fifty feet of land owned by the plaintiffs. The construction of the driveway would affect few other property owners.

The commission approved the application for a special permit at a public hearing held on December 6, 1988. The commission had published notice of the hearing in a local newspaper in full compliance with the provisions of General Statutes § 8-3c (b) and § 14.5 of the Glastonbury zoning regulations,[3] but the plaintiffs did

"(g) All rear lots shall be provided with a vehicular turnaround at the dwelling in order to accommodate emergency vehicles. The Town street entrance to the rear lot access driveway shall be posted with a house number identification sign with numbers at least 6″ high.

"(h) Each rear lot shall comply in all respects with the requirements of the underlying zone as established in Sections 3 and 4 of the Building-Zone Regulations, except for frontage requirements. For purposes of determining compliance with this subsection, the lot line from which the access driveway leads shall be considered the front line of any proposed rear lot.

"6.8.5 The following written reports shall be requested by the applicant and made available to the Office of Community Development ten (10) days prior to the Public Hearing:

"1. Reports from the Police and Fire Marshal as to the feasibility of ready access by emergency vehicles to each dwelling."

[3] "[General Statutes] Sec. 8-3c. SPECIAL PERMITS, EXCEPTIONS AND EXEMPTIONS. HEARINGS. FILING REQUIREMENTS. (a) If an application for a special permit or special exception involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the applicant shall submit an appli-

not receive actual notice.[4] The plaintiffs did not attend the hearing, but they appealed the commission's rul-

cation to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for a special permit or special exception.

"(b) The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit or special exception, as provided in section 8-2, and on an application for a special exemption under section 8-2g. The commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing. In addition to such notice, such zoning commission may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. Such commission shall decide upon such application or request within the period of time permitted under section 8-7d. Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for a special permit or special exception, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. Such permit or exception shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk, as the case may be, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

Section 14.5 of the Glastonbury zoning regulations provides:

"14.5 HEARINGS. The Commission shall hold a public hearing whenever required by the Connecticut General Statutes, as amended, and may hold a public hearing on any application to it for any other matter. The Commission shall adopt appropriate and reasonable procedures for the timing, notice and conduct of such hearings, except as otherwise provided or required in the Connecticut General Statutes, as amended.

"At any hearing, any party may appear in person and may be represented by an agent or by an attorney."

[4] The plaintiff Beck did admit that while Osgood's application was pending he visited his property and noticed stakes on Osgood's rear lot.

ing to the Superior Court after the commission published notice of its decision as required by § 8-3c (b).

In their appeal of the commission's decision to grant the special permit, the plaintiffs claimed that: (1) the board's action was arbitrary, illegal, and an abuse of discretion because the proposed dwelling was not within 1000 feet of the public portion of Dayton Road[5] and because Osgood did not own a "fee interest in a right-of-way" providing access to his lot as required by § 6.8.4 (e) of the Glastonbury zoning regulations; and (2) the notice provisions of § 8-3c (b), as applied to the plaintiffs, denied them due process of law.

The trial court dismissed the plaintiffs' appeal and also denied the named defendant's motions for sanctions against the plaintiffs for alleged bad faith pleading and harassing litigation tactics. The plaintiffs filed a petition for certification to appeal and the named defendant filed a petition for certification to cross appeal. The Appellate Court granted both petitions and we transferred the matter to this court pursuant to Practice Book § 4023. On appeal, the plaintiffs raise the same two claims they argued before the trial court, while the named defendant in its cross appeal claims that the trial court improperly denied its motions for sanctions.

I

The plaintiffs' first claim is that the commission erred in granting the special permit because Osgood's application did not satisfy the requirements of § 6.8.4 (e) of the Glastonbury zoning regulations. Section 6.8.4 (e), which sets forth one of the criteria that must be satis-

---

[5] Section 6.8.4 (c) of the Glastonbury zoning regulations provides that, in the absence of a waiver by the commission, construction on a rear lot shall not be located farther than 1000 feet from the town street to which access is provided. The plaintiffs had argued that the application did not meet this requirement, but they abandoned this claim at the final hearing. The plaintiffs have not pursued that argument in this appeal.

fied before the commission can authorize construction on a rear lot, provides that "[t]he owner(s) of each rear lot or lots *shall own the fee interest in a right-of-way* at least 20 feet wide; provided, however, that the Commission may, in its discretion, waive the requirement of fee ownership, as long as property over which said right-of-way passes shall have frontage on a Town road in excess of 20 feet over the minimum frontage required in the underlying zone or shall be property to which frontage requirements are not applicable." (Emphasis added.) The plaintiffs contend that the only reasonable interpretation of the phrase, "fee interest in a right-of-way," is one that requires the applicant for a special permit for rear lot construction to have fee simple title, as opposed to a mere easement, to a strip of land at least twenty feet in width that extends from the rear lot to a public road.

General Statutes § 13a-55[6] provides a right-of-way over an abandoned roadway for owners of property abutting the abandoned road. The defendants assert, and the trial court implicitly concluded, that the reference in § 6.8.4 (e) to a "fee interest in a right-of-way" is ambiguous and that the commission could reasonably have interpreted the regulation to mean that Osgood's indefeasible statutory right-of-way under § 13a-55 satisfied the requirements of § 6.8.4 (e).[7] We agree.

---

[6] General Statutes (Rev. to 1987) § 13a-55 provides: "RIGHT-OF-WAY OF PROPERTY OWNERS BOUNDING A DISCONTINUED OR ABANDONED HIGHWAY OR A HIGHWAY ANY PORTION OF WHICH IS DISCONTINUED OR ABANDONED. Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way over such discontinued or abandoned highway to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway."

[7] The defendants also argue as an alternative ground for affirmance that the commission properly exercised its discretion under § 6.8.4 (e) to waive, under certain circumstances, the requirement that the applicant have "fee-ownership" of a right-of-way. On the basis of our agreement with the defendants' principal claim, we do not need to address this alternative ground.

When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* 167 Conn. 182, 184–85, 355 A.2d 91 (1974); *Farina* v. *Zoning Board of Appeals,* 157 Conn. 420, 422, 254 A.2d 492 (1969). "Generally, it is the function of a zoning board or commission to decide 'within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 117, 186 A.2d 377 [1962]; *Stern* v. *Board of Zoning Appeals,* 140 Conn. 241, 244, 99 A.2d 130 [1953]. In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. *Connecticut Sand & Stone Corporation* v. *Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594 [1963].' " *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988).

The ultimate issue is whether the trial court was correct in ruling that the commission's decision to grant the special permit was not arbitrary, illegal or an abuse of its discretion. *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980); *Bogue* v. *Zoning Board of Appeals,* 165 Conn. 749, 752, 345 A.2d 9 (1974). If, in granting the special permit, the commission construed § 6.8.4 (e) beyond the fair import of its language, then the commission acted in an arbitrary and illegal manner. *Spero* v. *Zoning Board of Appeals,* 217 Conn. 435, 441, 586 A.2d 590 (1991); *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480,

490–91, 547 A.2d 528 (1988). The rules of statutory construction apply to the interpretation of local regulations. See *Schwartz* v. *Planning & Zoning Commission,* supra, 153. We look first to the language of the regulation to determine the intent of the enacting body. *Spero* v. *Zoning Board of Appeals,* supra. If the language of the regulation is ambiguous, the court can look to its purpose as an aid in construing it. *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.,* 217 Conn. 361, 364, 585 A.2d 1210 (1991); *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 405, 528 A.2d 805 (1987).

As a threshold matter, we note that the commission did not explicitly state its reasons for concluding that § 6.8.4 (e) was satisfied.[8] It is well established, however, that if the commission fails to state clearly the reasons for its decision, the trial court, and this court on appeal, must search the record to find a basis for the commission's decision. *Parks* v. *Planning & Zoning Commission,* 178 Conn. 657, 661–62, 425 A.2d 100 (1979); *A.P. & W. Holding Corporation* v. *Planning & Zoning Board,* supra, 186–87. During the hearing, the defend-

---

[8] The trial court concluded that "[w]hile defendant Osgood does not own a fee interest his statutorily given right-of-way must be deemed equivalent to a fee interest, thereby satisfying [§ 6.8.4 (e) of the Glastonbury Zoning Regulations]. So voted the Commission and so agrees the court."

The plaintiffs challenge the trial court's conclusion that the commission actually ruled on whether Osgood had any type of interest that would satisfy the requirement of § 6.8.4 (e) that the applicant have a fee interest in a right-of-way. The plaintiffs contend that the transcript of the hearing indicates that the commission believed it could approve Osgood's application without determining whether Osgood possessed the required right-of-way.

We first note that the burden of proof in demonstrating that the commission acted improperly is borne by the plaintiffs. *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980); *Horvath* v. *Zoning Board of Appeals,* 163 Conn. 609, 316 A.2d 418 (1972). Although we note that the transcript of the hearing provides some support for the plaintiffs' position, on the basis of our review of the transcript we conclude that the commission did rule on this issue prior to granting the special permit.

ant Osgood referred to his rights to access his property and improve the right-of-way under the abandoned road statute, § 13a-55, and we conclude that those rights provide an adequate basis for the commission's action.

Section 13a-55 provides in pertinent part that "[p]roperty owners bounding a discontinued or abandoned highway . . . shall have a right-of-way over such discontinued or abandoned highway to the nearest or most accessible highway . . . ." In *Luf* v. *Southbury,* 188 Conn. 336, 344, 449 A.2d 1001 (1982), we stated that under § 13a-55 owners of property abutting an abandoned road have an easement of access over the abandoned road to the public highway and also have the right to improve the existing roadbed.[9] We also noted that owners of land abutting a highway, including both abandoned and public highways, have a fee interest in the land under the road to the midpoint of the highway. Id., 341–45. The plaintiffs claim that § 13a-55 does not provide an adequate basis for the commission's decision because the language of § 6.8.4 (e) unambiguously requires the applicant for a permit to build on a rear lot to have a fee simple interest, rather than an easement, in the entire strip of land providing access to the rear lot. We disagree.

The reference in § 6.8.4 (e) to a "fee interest in a right-of-way" is inherently ambiguous. The Glastonbury zoning regulations provide no definition of this term. "Right-of-way" is generally defined as "a legal right of passage *over another person's ground*—compare EASEMENT, SERVITUDE." (Emphasis added.) Webster's Third New International Dictionary; accord Black's Law Dictionary (5th Ed. 1979); 25 Am. Jur. 2d, Ease-

---

[9] Osgood's *right-of-way* under General Statutes § 13a-55 is twenty-four feet wide, the width of the abandoned portion of Dayton Road. His proposed driveway is twenty feet wide, which satisfies the width requirement in § 6.8.4 (e) of the Glastonbury zoning regulations.

ments and Licenses § 7, p. 422. The term "fee interest" normally connotes a fee simple interest, or absolute ownership, of real property. See *Hochberg* v. *Zoning Commission,* 19 Conn. App. 357, 360, 561 A.2d 984 (1989) ("a highway easement over land owned in fee by a private party does not eliminate that party's fee ownership"); 28 Am. Jur. 2d, Estates §§ 8–10. Because the term "right-of-way" is usually viewed as describing a right to travel over the property of another, the coupling of the terms "fee interest" and "right-of-way" in § 6.8.4 (e) creates ambiguity.

The defendants argue that the commission could reasonably have interpreted the term "right-of-way" to mean an easement, as did the trial court, and that the reference to a "fee interest" was meant to assure that the easement was not held for a limited term. See *Rosenblum* v. *Eisenhauer,* 29 Conn. Sup. 216, 224, 280 A.2d 537 (1971) (an easement can " 'be a freehold or a chattel interest according to its duration, and may be enjoyed in fee, and it may be a base, qualified, or determinable fee, or it may be less than a fee, or even for a term of years' "), quoting 28 C.J.S., Easements § 1 (b), p. 621. The defendants also rely on the trial court's observation that one of the purposes in regulating construction on rear lots is to assure that emergency vehicles can have access to the property. The defendants note that their interpretation of § 6.8.4 (e) is entirely consistent with this purpose.[10] In light of the liberal discretion with which the commission is endowed in interpreting its own regulations; *Schwartz* v. *Planning & Zoning Commission,* supra, 152; we agree with the trial court that the commission could reasonably have concluded that the defendant Osgood's statutory right-of-way under § 13a-55 satisfied the

---

[10] Osgood's application was approved by the chief of the Glastonbury police department, who indicated that the rear lot would be accessible by emergency vehicles.

requirement of § 6.8.4 (e) that he have a "fee interest in a right-of-way."

## II

The plaintiffs' second claim is that General Statutes § 8-3c (b)[11] denied them their rights to procedural due process guaranteed under the fourteenth amendment to the United States constitution and article first, § 8 of the Connecticut constitution, as amended by article seventeen of the amendments to the Connecticut constitution.[12] Section 8-3c (b) provides that notice of the time and place of a hearing on a special permit application "shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of such hearing." The plaintiffs assert that they were entitled, at a minimum, to notice by mail of the hearing on the defendant Osgood's application.

In order to prevail on their due process claim, the plaintiffs must prove that: (1) the property interest they assert is cognizable under the due process clause; (2) they have been deprived of that property interest; and (3) the deprivation of the property interest has occurred without due process of law. *Connecticut Education Assn.* v. *Tirozzi,* 210 Conn. 286, 293, 554 A.2d 1065 (1989). We agree with the trial court that the plaintiffs are unable to demonstrate that they have been deprived of a constitutionally cognizable property interest.[13]

---

[11] See text of statute in footnote 3, supra.

[12] Because the language of the due process provisions of the federal and state constitutions is similar, and because the plaintiffs have not argued that the Connecticut constitution provides broader due process rights than the federal constitution, we will address these claims together. *Connecticut Education Assn.* v. *Tirozzi,* 210 Conn. 286, 293 n.8, 554 A.2d 1065 (1989).

[13] The trial court also held that even if the plaintiffs had been deprived of a constitutionally cognizable property interest, their claim would still

## A

The first property interest asserted by the plaintiffs is their "statutory right to notice and an opportunity to be heard" before the defendant commission pursuant to § 8-3c (b). In essence, the plaintiffs are claiming that they have a property interest in the procedures set forth in § 8-3c (b) and that they were denied the right to avail themselves of these procedures because the statute did not require that they receive actual notice of the hearing.[14] We conclude that the asserted interest does not constitute a constitutionally cognizable property interest.

"Property interests are more than abstract needs, desires or unilateral expectations of benefits or privileges. Rather, a person must have 'a legitimate claim of entitlement' to a benefit or privilege to have a property interest in that benefit. *Board of Regents* v. *Roth,* [408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)]. 'Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." ' *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), quoting *Board of Regents* v. *Roth,* supra, 577; see also *Paul*

fail because notice by publication was sufficient under the circumstances of this case. We do not need to address this issue because we conclude that the plaintiffs have suffered no such deprivation. We do note, however, that we have previously held that constructive notice by publication of actions that affect large numbers of property owners is constitutionally sufficient. *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 491–92, 440 A.2d 185 (1981); *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325–26, 207 A.2d 58 (1965).

[14] Although General Statutes § 8-3c (b) provides that zoning commissions may, by regulation, choose to provide actual notice of hearings by mail to abutting landowners, the commission has not done so.

v. *Davis,* 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L. Ed. 2d 405, reh. denied, 425 U.S. 985, 96 S. Ct. 2194, 48 L. Ed. 2d 811 (1976)." *Connecticut Education Assn.* v. *Tirozzi,* supra, 294.

A party seeking to demonstrate a property interest entitled to protection under the due process clause cannot "simply rely upon the procedural guarantees of state law or local ordinance." *Cain* v. *Larson,* 879 F.2d 1424, 1426 (7th Cir.), cert. denied, 493 U.S. 992, 110 S. Ct. 540, 107 L. Ed. 2d 537 (1989), citing *Bishop* v. *Wood,* 426 U.S. 341, 345–47, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976). A statute or ordinance providing procedural guarantees does not create a constitutionally protected property interest unless it sets forth substantive criteria that limit the discretion of the decision-making body. *Cain* v. *Larson,* supra; *Fleury* v. *Clayton,* 847 F.2d 1229, 1231 (7th Cir. 1988); see *Olim* v. *Wakinekona,* 461 U.S. 238, 248–51, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *Hewitt* v. *Helms,* 459 U.S. 460, 471, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). A common example of such substantive criteria is a requirement that employees be fired only "for cause." *Cain* v. *Larson,* supra. Even if the statute includes substantive criteria, a party whose asserted property interest is not related to the substantive criteria but rather is grounded solely in the procedures set forth in the statute does not have a constitutionally cognizable property interest. Id., 1427.

The only substantive criterion set forth in § 8-3c (b) is the following provision: "The commission shall not render a decision on the application until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency." Since the plaintiffs do not claim that the commission disregarded the

provision of § 8-3c (b) concerning the report of the inland wetlands agency, the interest they assert is divorced from the substantive criterion in § 8-3c (b). The plaintiffs assert a property interest only in the procedures afforded by § 8-3c (b), namely, the right to notice and an opportunity to be heard at the hearing on the application. Such an interest is not protected under the due process clause. See *Cain* v. *Larson,* supra.

Even if the plaintiffs did not rely on the procedural provisions in § 8-3c (b) and claimed instead that they had a property interest in the commission's rejecting Osgood's application on the basis of the substantive criterion in § 8-3c (b), their argument would still fail. The inland wetlands agency recommended that Osgood's application be granted. Therefore, § 8-3c (b) does not provide the plaintiffs with a basis for a legitimate claim of entitlement to a rejection of Osgood's application. See *Yale Auto Parts, Inc.* v. *Johnson,* 758 F.2d 54, 57–59 (2d Cir. 1985) (plaintiff had a mere unilateral expectation in issuance of certificate of location approval by zoning board where it could not demonstrate a very strong likelihood of approval had the board properly exercised its discretion); *Ravalese* v. *East Hartford,* 608 F. Sup. 575, 576-78 (D. Conn. 1985) (plaintiff had only a unilateral expectation in not having his property included in a flood plain zone because zoning board had broad discretion).

The trial court properly relied on *Fusco* v. *Connecticut,* 815 F.2d 201 (2d Cir.), cert. denied, 484 U.S. 849, 108 S. Ct. 149, 98 L. Ed. 2d 105 (1987), in concluding that § 8-3c (b) does not create constitutionally protected property rights. The plaintiffs in *Fusco* claimed that General Statutes §§ 8-3 and 8-7, which provide for notice by publication of hearings concerning zoning matters, had deprived them of property without due process of law because those statutes do not require

that actual notice of such hearings be given to parties who are statutorily aggrieved under General Statutes § 8-8 (a).[15] Id., 204. The notice provisions of §§ 8-3 and 8-7 are similar to the provisions of § 8-3c (b) at issue in this case. In *Fusco,* the plaintiffs, lacking actual notice of zoning hearings concerning land abutting their property, failed to take a timely appeal from the resulting decisions. Id., 203–204. The court rejected the plaintiffs' claim that they had a property interest in their right to appeal under § 8-8 (a), noting that "[t]he opportunity granted abutting landowners and aggrieved persons to appeal decisions of planning and zoning commissions and zoning boards of appeal is purely procedural and does not give rise to an independent interest protected by the fourteenth amendment." Id., 205–206, citing *BAM Historic District Assn.* v. *Koch,* 723 F.2d 233, 236–37 (2d Cir. 1983); *Yale Auto Parts, Inc.* v. *Johnson,* supra, 58.

The plaintiffs' reliance on *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), is misplaced. In *Logan,* the United States Supreme Court held that the plaintiff had a constitutionally protected property interest in his right to use the adjudicatory procedures of the Illinois fair employment practices statute. Id., 428–33. Noting that "[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause' "; id., 430; the court concluded that the plaintiff's interest in using the adjudicatory procedures satisfied this requirement because the adequacy of his cause of action would be assessed using the equivalent of a "for cause" standard. Id., 431. In

---

[15] A "statutorily aggrieved" party is "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision" of a zoning board of appeals. General Statutes § 8-8 (a) (1). Such persons have the right to appeal the board's decision to the Superior Court. Id.

contrast, the property interest asserted by the plaintiffs in the present case has no connection to the substantive criterion set forth in § 8-3c (b).[16]

We conclude therefore that the plaintiffs' interest in attending the hearing on the defendant Osgood's application was not a protected property interest under the due process clause.

## B

The plaintiffs also contend that the impact of the commission's decision on their own property, in which they clearly have a property interest, is a constitutionally cognizable deprivation. A portion of the defendant Osgood's proposed driveway will travel over approximately fifty feet of the abandoned road on land owned by the plaintiffs. The plaintiffs claim that this "actual physical invasion" of their land is protected under the due process clause.[17] We disagree.

The plaintiffs cannot dispute the fact that Osgood possessed the right-of-way under § 13a-55 prior to the commission's decision, including the right to use and improve the existing roadbed. The only effect of the commission's decision was to make the improvement

[16] The plaintiffs also rely on *Fong* v. *Planning & Zoning Board of Appeals,* 212 Conn. 628, 633–34, 563 A.2d 293 (1989), where we held that a successful applicant to the zoning board of appeals was an indispensable party to an appeal of the board's decision. We stated that the applicant acquired a "special interest" in the appeal when he received a favorable ruling from the board. Id., 633. Unlike the plaintiffs in the present case, however, the applicant in *Fong,* having initially received a favorable decision, had a legitimate claim of entitlement rather than a mere unilateral expectation of a favorable decision on appeal to the Superior Court.

[17] The plaintiffs also argued before the trial court that the construction of the driveway would decrease the value of their land and claimed that this loss constituted a constitutionally cognizable deprivation. The trial court found that the construction of the driveway would not diminish the value of the plaintiffs' property. The plaintiffs do not challenge that finding in this appeal, and therefore we do not address whether a diminution in value is a cognizable deprivation.

and use of the right-of-way a strong likelihood rather than a mere possibility. Because the plaintiffs' ownership interest was always subject to Osgood's rights under § 13a-55, we find no support for the plaintiffs' position that the commission's decision deprived them of their property in a constitutional sense.

The plaintiffs contend that their claim of deprivation is supported by *Mennonite Board of Missions* v. *Adams,* 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983), and *Tulsa Professional Collections Services, Inc.* v. *Pope,* 485 U.S. 478, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988). In *Tulsa Professional Collections Services, Inc.,* the court held that a creditor's cause of action against a decedent's estate for an unpaid bill was a property interest protected under the due process clause and that a nonclaim statute barring the claim if it was not brought within a certain time period had deprived him of that interest. Id. In *Mennonite Board of Missions,* the court concluded that a mortgagee of property that had been sold in a tax sale was entitled to actual notice of the sale because it would deprive him of a constitutionally cognizable property interest. *Mennonite Board of Missions* v. *Adams,* supra. Both of these cases involved state action that " 'immediately and drastically diminish[ed]' " the value of the property interest at stake. *Tulsa Professional Collections Services, Inc.* v. *Pope,* supra, 485, quoting *Mennonite Board of Missions* v. *Adams,* supra, 798. In contrast, the present plaintiffs have made no showing that their interest will be affected to nearly the same degree as those in *Tulsa Professional Collections Services, Inc.,* and *Mennonite Board of Missions,* and Osgood already had the right to improve his right-of-way prior to the commission's decision.

The plaintiffs also rely on *Pinsky* v. *Duncan,* 898 F.2d 852, 854 (2d Cir.), modified, 907 F.2d 17 (2d Cir.), cert. granted sub nom. *Connecticut* v. *Doehr,*      U.S.      ,

111 S. Ct. 42, 112 L. Ed. 2d 18 (1990), in which the court held that the nonpossessory attachment of real estate constitutes a deprivation of property under the due process clause. In *Pinsky,* the court noted that attachment "has a significant impact on the owner's ability to exercise the full scope of his property rights" because it impairs the marketability of real property, it can harm the property owner's credit rating, and it can deprive the owner of using the property as collateral. Id. These effects differ dramatically from any that will accompany the construction of Osgood's driveway on a small portion of the plaintiffs' land, especially in light of the fact that Osgood could have built the driveway with or without the commission's approval of his application. See also *Fusco* v. *Connecticut,* supra, 206 (zoning board decision did not deprive abutting landowner of property in a constitutional sense).

We conclude that the plaintiffs have not suffered a deprivation recognized under the due process clause and therefore deny their due process claim.

### III

In its cross appeal, the named defendant alleges that the trial court should have granted its motions for sanctions against the plaintiffs. It alleges that the plaintiffs made false factual allegations without reasonable cause, that the conduct of the plaintiffs during the pleading and discovery stages was oppressive and harassing, and that the appeal is meritless. The trial court denied the motions, noting that the most the court could find was that the plaintiffs had "over-lawyered for questionable purposes."

The named defendant claims that it was entitled to sanctions under Practice Book § 111[18] and under the

[18] "[Practice Book] Sec. 111.—UNTRUE ALLEGATIONS OR DENIALS

"Any allegation or denial made without reasonable cause and found untrue shall subject the party pleading the same to the payment of such reason-

trial court's inherent authority to impose sanctions. *Fattibene* v. *Kealey,* 18 Conn. App. 344, 358–61, 558 A.2d 677 (1989). "[T]he task of determining whether sanctions should be imposed is inherently fact bound, and requires carefully circumscribed discretion to be exercised by the trial court." Id., 362; see *Gionfrido* v. *Wharf Realty, Inc.,* 193 Conn. 28, 33–34, 474 A.2d 787 (1984). We have reviewed the record and we conclude that the trial court did not abuse its discretion in denying the motions for sanctions.[19]

The judgment is affirmed on both the appeal and the cross appeal.

In this opinion the other justices concurred.

---

able expenses, to be taxed by the court, as may have been necessarily incurred by the other party by reason of such untrue pleading; provided that no expenses for counsel fees shall be taxed exceeding two hundred fifty dollars for any one offense. Such expenses shall be taxed against the offending party whether he prevails in the action or not."

[19] The named defendant claims that Practice Book § 111 compelled the trial court to order sanctions because it asserts that the trial court found that the plaintiffs made untrue allegations about the length of the proposed driveway without reasonable cause. Although the trial court did find that the plaintiffs' claims about the length of the driveway were incorrect, the trial court made no specific finding as to whether these allegations were made without reasonable cause. Because the named defendant never sought articulation of the basis for the trial court's denial of its motions for sanctions, the record is inadequate for review of this issue and therefore we decline to address it. See *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 622, 495 A.2d 1006 (1985).