[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of an appeal by O G Industries, Inc., hereinafter (O G Industries), pursuant to General Statutes § 8-8
from a decision of the defendant Beacon Falls Planning and Zoning Commission, hereinafter (the commission), which conditioned its approval of the plaintiff's permit to excavate material from a parcel of land owned by them on the requirements that the plaintiff (1) not use clean fill and (2) not excavate an additional property.
At all relevant times, O G Industries has owned a 41 acre parcel of land, located south of state route 42, adjacent to and on the west side of the Naugatuck River. This property is zoned as an industrial park. O G Industries has excavated this parcel as a gravel mine pursuant to an earth removal permit issued by Beacon Falls and a stream channel encroachment permit issued by the Connecticut Department of Environmental Protection (DEP). As a result of this excavation, O G Industries created a pond, which is about 21 acres. A berm separates the pond from the Naugatuck River.
Directly to the south of the O G Industries property is a seven acre parcel that is known as the "Hagen" property. This property is also in an industrial zone. O G Industries owns an option to purchase the Hagen property.
In June, 1988, the DEP initiated an enforcement action against O G Industries. The DEP was concerned about the water quality of the Naugatuck River and the stability of the berm that separates the pond from the river. On or about August 8, 1988, the DEP and O G Industries agreed to a consent order.
The consent order states, in pertinent part:
"On or before August 31, 1988, O G shall submit to the Commissioner for review and approval a scope of study report CT Page 9596 addressing a proposed methodology for evaluating all alternatives for restoration of the site so that the site can no longer reasonably be expected to create a source of pollution to the waters of the state, such alternatives to include but not be limited to the refilling of the site to the surface water elevation of the Naugatuck River during average flow conditions."
"Within 30 days after the approval of the scope of study submitted under paragraph 12, O G shall submit to the Commissioner for review and approval a comprehensive report evaluating the alternatives for restoration of the site, and proposing a preferred alternative with supporting justification therefor."
"Within 30 days after approval of the report submitted under paragraph 13, Respondent O G shall submit to the Commissioner for review and approval detailed plans and specifications for the restoration alternative approved by the Commissioner under paragraph 13. Said report shall include but not be limited to a proposed schedule for restoration, a management plan to assure the suitability of any material to be deposited at the site and to assure only to those who are authorized to enter the site, and a thorough evaluation of the potential impact on water quality from each of the materials which O G proposes to deposit or have deposited at the site."
"Respondent O G shall restore the site in accordance with the plan and schedule approved by the Commissioner under paragraph 14."
"Nothing herein shall relieve O G of its obligations under federal, state or local law."
O G Industries selected a plan and presented it for the DEP's approval. This plan encompassed the following steps: (1) excavating approximately 162,000 cubic yards of earth from the Hagen property; (2) constructing an outlet from the Hagen property to provide a controlled flow from the pond to the Naugatuck River; and (3) stabilizing the berm with "clean fill," including concrete, masonry, brick, concrete block, soil and rock.
The DEP Bureau of Water Management approved the plan in December 1993. The U.S. Army Corps of Engineers issued its approval on March 15, 1994. The Beacon Falls Inland Wetland and CT Page 9597 Water Course Commission issued its approval on March 31, 1994.
On October 1, 1993, O G Industries applied to the Beacon Falls Planning and Zoning Commission for an earth products removal permit that incorporated the plan described above. The commission held public hearings on December 1, 1993; January 5, 1994; April 6, 1994.
On April 13, 1994, the commission approved the O G Industries plan with two modifications. The commission refused to allow the depositing of "clean fill" in the pond and also refused to allow the excavation of the Hagen parcel.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v.Planning and Zoning Comm'n, 219 Conn. 303, 307, 592 A.2d 953
(1991). "The question of aggrievement is essentially one of standing." DiBonaventure v. Zoning Board of Appeals, 24 Conn. App. 369,373, 573 A.2d 1222 (1991). Unless the plaintiff alleges and proves aggrievement, his or her appeal must be dismissed. Id. A court may find aggrievement based upon the plaintiff's status as the owner of the subject property.Winchester Woods Assoc. v. Planning Zoning Comm'n, 219 Conn. 303,308, 529 A.2d 953 (1991).
O G Industries submitted certified copies of the deed that demonstrates it is the owner in fee of its parcel and certified copies of the contract which gives it an option to purchase the Hagen property. Accordingly, the court finds that O G Industries is aggrieved.
"In reviewing an appeal from an administrative agency, the trial court must determine whether `the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.'" (Citations omitted.) Smith v. Zoning Board ofAppeals, 227 Conn. 71, 80, 629 A.2d 1089 (1993). The burden of proof is on the plaintiff to demonstrate that the board acted improperly. Spero v. Board of Appeals, 217 Conn. 435, 440,596 A.2d 590 (1991).
O G Industries asserts that the commission exceeded its authority in that:
1) "The conditions imposed on the closure plan by the planning and zoning commission directly conflict with the DEP's CT Page 9598 pollution abatement order and with state and federal agency approval of the closure plan, and thus are preempted by state and federal law."
2) "The commission's prohibition of the use of clean fill violates § 8-2 of the General Statutes and misconstrues town ordinances."
O G Industries argues that the two conditions imposed by the commission are preempted by state and federal law. O G Industries contends preemption analysis is appropriate in this case because O G Industries cannot comply with the Army Corps of Engineers permit and the DEP permit that approves its closure plan because the conditions imposed by the commission. O G Industries concludes that these factors militate in favor of a finding by the court that federal and state law preempt the Beacon Falls regulations.
The commission argues that its regulations are not preempted. The commission contends that the Army Corps of Engineers and the DEP explicitly recognize local authority; and their approval of O G Industries's closure plan required O G Industries to comply with all local regulations. The commission argues that this case is analogous to North Haven v. Upjohn,753 F. Sup. 423, aff'd 921 F.2d 27, cert. denied, 500 U.S. 918,111 S.Ct. 2016, 114 L.Ed.2d 102 (1992).
"[A] local ordinance is preempted by a state statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation on the matter . . . or whenever the local ordinance irreconcilably conflicts with the statute. . . . Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives."Helicopter Assoc., Inc. v. Stamford, 201 Conn. 700, 705,519 A.2d 49 (1986), quoting Shelton v. Commissioner, 193 Conn. 506,479 A.2d 208 (1984).
The permits issued by both the Army Corps of Engineers and the DEP recognize local authority. The Army Corps of Engineers' permit provides that "[a]lso note that this permit does not remove any requirement for state or local permits." The DEP permit provides that "[t]his authorization . . . is further subject to any and all . . . local laws or regulations pertinent CT Page 9599 to the property or activity affected hereby."
The court must determine the nature of the DEP action. O G Industries contends that the DEP has issued an "order" with which O G Industries must comply. In contrast, the commission argues that although the DEP has ordered O G Industries to remedy the environmental problem, the DEP has permitted O G Industries to choose among several proposals.
The court concludes that the consent order is not a DEP order. "When the commissioner issues an order to any person to correct potential sources of pollution or to abate pollution, he shall cause a certified copy thereof to be filed on the land records." General Statutes § 22a-434. O G Industries has not presented a copy of an "order" filed on the land records. Accordingly, the court concludes that the DEP has not issued an order.
The Consent Order does not require O G Industries to use the closure plan. Pursuant to paragraph 13, O G Industries presented six plans to the DEP. The consent order grants O G Industries discretion to select a plan. The consent order, however, limits O G Industries's discretion to selecting a plan that complies with the local law.
North Haven Planning Zoning Comm'n v. Upjohn Co., supra,753 F. Sup. 423, supports the court's decision finding that the consent order is flexible. In North Haven, the planning and zoning commission sought an injunction to prevent Upjohn Co. from implementing a plan capping a sludge pile on the ground that the plan, which the EPA and DEP approved, violated the town zoning regulations. In the North Haven, the court found that "On June 15, 1988, the DEP Commissioner issued an Order requiring Upjohn to take all steps necessary to install certain water treatment facilities as required to comply with the applicable state water pollution discharge regulations." (Emphasis added.) North HavenPlanning Zoning Comm'n v. Upjohn Co., supra, 753 F. Sup. 426. "On September 29, 1989, the DEP and EPA formally approved Upjohn's capping plan." Id. In response to Upjohn's argument that the approval by the EPA, acting pursuant to the Resource Conservation Recovery Act (RCRA), preempted North Haven's zoning regulations, the court stated that "[t]he language of the Approval contains no indication that the EPA or DEP has determined that this method of closure is the most
environmentally protective. . . . Furthermore, the conclusion CT Page 9600 that the EPA and DEP simply determined that federal and state standards were satisfied by the plan is supported by the fact that these agencies issued an Approval, rather than an order." Id., 432. The court concluded that "the language of the Approval itself includes that it does not relieve Upjohn from obtaining any further authorizations required by the Connecticut General Statutes, which provide for the enactment of local zoning regulations." Id. In affirming the district court's decision, the Second Circuit noted that the "EPA and DEP responded to public comments and questions by stating that if the Connecticut courts upheld a ruling that Upjohn's current plan would violate zoning regulations, Upjohn would have to submit to EPA and DEP a new plan for review and approval." North Haven Planning ZoningComm'n v. Upjohn Co., 921 F.2d 27, 28 (2nd Cir. 1990).
O G Industries has emphasized the importance of explicit recognition of local authority. Courts are less likely to find preemption when a statute recognizes local authority. Courts, however, recognize that even without a "savings" clause, state statutes may work in congruence with local ordinances and regulations. "Where the legislature has delegated to the local government the power to deal with a particular field of regulation, i.e., zoning, the fact that a statute regulates the same subject in a limited way does not by that very fact deprive the local government of the power to act in a more comprehensive, but not inconsistent manner." P.X. Restaurant, Inc. v. Windsor,189 Conn. 153, 160-61, 454 A.2d 1258 (1983).
The Supreme Court has stated that "[w]hether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the degree to which the ordinance frustrates the achievement of the state's objectives." Helicopter Assoc., Inc.v. Stamford, supra, 201 Conn. 705.
The purpose of the DEP action is to improve the water quality of the Naugatuck River. The purpose of the Beacon Fall's regulation that forbids further excavation within the town is to limit development in the town. These two purposes are not in conflict. The municipal regulation does not frustrate the state objective, the municipal regulation frustrates only how O G Industries would prefer to meet the state's objective. Another option, such as refilling the pond with appropriate material, could satisfy the DEP and also comply with the zoning regulations. CT Page 9601
O G Industries further argues that Beacon Falls's prohibition of the use of "clean fill" violates General Statutes § 8-2 and misconstrues the applicable town ordinances. CitingBeckish v. Planning and Zoning Comm'n, 162 Conn. 11, 14-15,291 A.2d 208 (1971); Farina v. Zoning Board of Appeals, 157 Conn. 420,422, 254 A.2d 492 (1969); and Parish of St. Andrew's v.Zoning Board of Appeals, 155 Conn. 350, 354, 232 A.2d 916 (1967), O G Industries argues that the zoning regulations limit the authority to impose conditions on an approval. O G Industries continues that the Beacon Falls zoning regulations do not define "clean fill," and it concludes that because the regulations do not discuss clean fill, the commission did not have the authority to forbid O G Industries's use of clean fill.
Additionally, O G Industries offers that the zoning commission's reliance on a town ordinance is another reason for finding that the commission could not forbid the use of clean fill. According to O G Industries, a zoning commission can enforce only zoning ordinances, not town ordinances. O G Industries cites Caldrello v. Planning Board, 193 Conn. 387,476 A.2d 1063 (1984) and Thoma v. Planning and Zoning Comm'n,31 Conn. App. 643, 626 A.2d 809 (1993), aff'd 229 Conn. 325,640 A.2d 1006 (1994) as authority for this proposition.
The commission counters that the conditions the commission imposed are legal. The commission argues that the zoning regulations prohibit the proposed dump. According to the commission, clean fill is solid waste within the meaning of General Statutes § 22a-307(3) as interpreted by Connecticut Bldg.Wrecking Co. v. Carothers, 218 Conn. 580, 596-98, 596 A.2d 447
(1991). The commission concludes that the commission is authorized to forbid the use of clean fill within the zoning regulations. The commission states that because the zoning regulations forbid a commercial dump, the commission did not rely on town ordinances.
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity. . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of CT Page 9602 the regulations] and applied it with reasonable discretion to the facts." (Citations omitted; internal quotation marks omitted.)Double I Limited Partnership v. Plan Zoning Comm'n, 218 Conn. 65,72, 588 A.2d 624 (1991). The trial court must determine whether the commission's decision to grant the special permit with the condition that clean fill not be used was arbitrary, illegal or an abuse of its discretion. Id.
"[T]he commission cannot attach a condition that conflicts with the applicable zoning regulations to its approval of a special exception permit. [T]he conditions under which a special [permit] is allowed must be found in the regulations and cannot be altered; and if a condition is imposed by a commission without being warranted by the regulations, it is void." Michel v.Planning Zoning Comm'n, 28 Conn. App. 314, 327, 610 A.2d 720, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). Accordingly, the court must determine whether the zoning regulations forbid the use of "clean fill."
The zoning regulations provide, in part:
 6.4 Prohibited Use: Any use not specified as permitted in the district is prohibited. To assist in the interpretation of Articles II, III, and IV, the following uses, the listing of which [is] not intended to be exhaustive, are specifically prohibited:
 6.4.1 The outdoor accumulation of storage of trash, rubbish, debris, building materials . . . .
 6.4.2 The reduction, storage, dumping, or the maintenance of a facility for the reduction, storage, or dumping of refuse, garbage, or any other waste material. . . .
 6.4.8 The commercial operation of a commercial waste disposal or waste processing area, including but not limited to the dumping, grinding, depositing, storing, incinerating or land filling of solid waste, liquid waste, bulky waste, or processed or unprocessed trash or garbage.
"The rules of statutory construction apply to the interpretation of local regulations. . . . We look first to the CT Page 9603 language of the regulation to determine the intent of the enacting body. . . . If the language of the regulation is ambiguous, the court can look to its purpose as an aid in construing it." (Citations omitted.) Double I Limited Partnershipv. Plan Zoning Comm'n, supra, 218 Conn. 73.
The court finds that O G Industries has not met its burden of proving that the commission's decision to forbid the use of clean fill was "arbitrary, capricious or an abuse of discretion." The language of Beacon Falls zoning regulations §§ 6.4.1, 6.4.2 and 6.4.8 prohibit dumping material. Beacon Falls zoning regulations § 6.4.8 prohibits "[t]he commercial operation of a commercial waste disposal . . . area, including but not limited to the dumping, . . . depositing, . . . of solid waste." Although "solid waste" is not defined in the zoning regulations, a reasonable interpretation of "solid waste" includes "clean fill." "[W]ords in a statute must be given their plan and ordinary meaning." Paige v. Town Plan Zoning Comm'n, 35 Conn. App. 646,651, 646 A.2d 277 (1994) In its ordinary usage, "solid waste" includes items such as "concrete, masonry, brick, and concrete block," which are being disposed. See also, ConnecticutBldg. Wrecking Co. v. Carothers, supra, 218 Conn. 598.
Accordingly, the court finds that O G Industries has not met its burden of showing that the commission acted arbitrarily, capriciously or in an abuse of its discretion in that 1) the commission's conditions are not preempted by the 1988 DEP Consent Order and permits issued by the U.S. Army Corps of Engineers and the DEP, and 2) the commission may also forbid the use of clean fill. Therefore, the appeal is dismissed.
BY THE COURT,
Byrne, J.