[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Vineyard Construction Management Corporation (Vineyard), appeals a decision by the defendant, the planning and zoning commission of the town of Trumbull (the commission), approving with modifications the defendant Mutual Housing Authority's (MHA) site plan application under Connecticut's Affordable Housing Act and Trumbull's zoning regulations. The commission acted pursuant to the zoning regulations of the town of Trumbull and chapter 124 of the General Statutes. Vineyard appeals pursuant to General Statutes § 8-8.
 I. PROCEDURAL HISTORY
On June 15, 1998, the commission published notice of its decision to deny MHA's original site plan in the Connecticut Post. (ROR, Item 7.)
MHA thereafter submitted a revised site plan for approval, as permitted by General Statutes § 8-30g(d). (ROR, Items 9, 9a.) The commission modified and approved the MHA site plan at its July 1, 1998 meeting. (ROR, Item 12.) The commission CT Page 10153 published notice of its decision on July 8, 1998. (ROR, Item 13.)
Vineyard served process on July 21, 1998, leaving copies of its citation, appeal and bond with the town clerk, the chairman of the commission, and the executive director of MHA. (Sheriff's Return.)
The commission filed an answer and return of record and both parties filed briefs.
 II. FACTS
MHA is "a regional nonprofit housing development corporation with extensive experience in the administration of and compliance with affordable housing programs and regulations." (ROR, Item 1.) MHA has developed a plan to create affordable housing at 88 White Plains Road in Trumbull, Connecticut. (ROR, Item 1.) vineyard is the owner of stonebridge Estates, real property abutting the subject property on White Plains Road. (ROR, Items 1c Drawing No. SV1; 1e.)
In 1996, this court heard an appeal brought by MHA challenging the commission's decision to deny MHA's application for a zone change that would allow them to develop their proposed affordable housing. See Mutual Housing Assn. v. Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 549155 (August 12, 1996, Koletsky, J.). This court reversed the decision of the commission, ordering the commission to approve the application for a zone change. See id.
After the creation of a Housing Opportunity Development (HOD) Zone under the Trumbull zoning regulations pursuant to this courts prior decision; id.; MHA submitted an application for a special permit and site plan approval. (ROR, Item 1.) MHA proposed 52 housing units in eight buildings, plus a community building. (ROR, Items 1; 1c, Drawing No. SE2.)
The commission held a public hearing on the application on March 18, 1998, following the publication of notice on March 7 and March 13. (ROR, Items 3; 4.) The commission denied the MHA application on May 20, 1998, stating the following reasons for its decision:
"1) The proposed turn-around is inadequate and unsafe. CT Page 10154
A UPS truck cannot even navigate turning around.
"2) Proposed location of Building #8 poses a hazardous situation being in close proximity to the outlet plunge pool.
"3 There is a tremendous lack of square footage set aside for recreational purposes which may result in the unsafe condition of children playing in the street. There is no adequate area for adult recreational pursuits. "[Chairman] Capasso added that it is totally inadequate as far as safety for anyone who would live in this complex." (Return of Record [ROR], Item 6.)
Following the denial, MHA submitted a revised site plan to the commission, which "enlarged the turning area, increased slightly the size of the recreation areas and made the `plunge pool' area shallower." (ROR, Items 9; 9a.) The revised plan also increased the square footage of the fenced play area for children and eliminated two units from building number eight, bringing the total number of units to fifty. (ROR, Items 9; 9a; 11, p. 4.)
On June 20 and 26, 1998, the commission published notice of a public hearing to be held on July 1, 1998. (ROR, Item 10.) Following the hearing, also on July 1, the commission modified and approved the application, subject to a list of conditions, one of which eliminated an entire building from the plan. (ROR, Item 12.) "The Commission unanimously agreed to modify the site plan because Building #8 was placed directly in the center of the complex and would adversely conflict with the recreation area for the entire project, affecting the health, safety, and welfare of the residents. Because of the large number of units, the Commission determined the existing recreation space was inadequate and would reduce the health and quality of life of the residents, particularly the children." (ROR, Item 12.)
Vineyard now appeals the commission's July 1 decision.
 III. JURISDICTION A. Aggrievement
Vineyard alleges that it is aggrieved as a "person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board," under General Statutes § 8-8(a)(1). In support of its claim of CT Page 10155 aggrievement, Vineyard refers to the maps in the record (ROR, Item 1c) and the list of property owners within 500 feet of the property line of the subject property (ROR, Item 1e).
The affordable housing statute provides that "any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units . . . contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section." General Statutes § 8-30g (b). "The reference to Section 8-8 and the wording of the first sentence of § 8-30g(b) clearly suggest to this court that even though the word `aggrieved' was not used by the legislature, Connecticut common law applies to these appeals."Frumento v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 395813 (July 21, 1993, Berger, J.) (8 C.S.C.R. 833).
At the hearing, Vineyard presented evidence that its property abuts the subject property, and the Court finds it has demonstrated its aggrievement.
 B. Timeliness and Service of Process
The commission provided published notice of its decision on July 8, 1998. (ROR, Item 13.) Vineyard commenced its appeal by service of process on July 21, 1998, within the fifteen-day period prescribed by General Statutes §§ 8-8 (b) and 8-30g
(b). Vineyard served the town clerk, the chairman of the commission, and MHA as required by General Statutes § 8-8 (e) and (f). The Court finds that Vineyard's appeal was filed in accordance with the timing and service of process provisions of the General Statutes.
 IV. SCOPE AND STANDARD OF JUDICIAL REVIEW
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity . . . Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Citations omitted; internal quotation marks omitted.) Double I Limited Partnership v. Plan ZoningCT Page 10156Commission, 218 Conn. 65, 72, 588 A.2d 624 (1991). As such, "[the commission's] discretion is more limited and it must approve an application if the application conforms to the regulations. A.P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, [355 A.2d 911 (1974)." Greene v. Ridgefield planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 442131 (January 6, 1993, Berger, J.) (8 Conn. L. Rptr. 137, 141).
In an affordable housing appeal where the plaintiff seeks "to reverse a commission's approval, [the plaintiff's] burden must be different from that in a traditional appeal as the commission's standard of review is different from that in a traditional appeal. . . . Accordingly, the nondeveloper plaintiff in challenging an affordable housing approval must meet a higher burden." Notestine v. Farmington Town Plan Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 534253 (June 20, 1995, Berger, J.).
 V. DISCUSSION
Vineyard alleges that the commission "acted illegally, arbitrarily and in abuse of the discretion vested in it by law. . . ." Vineyard argues that the application as modified by the commission does not meet the standards of General Statutes § 8-30g (c) and zoning regulations applicable to site plan approval. Article XVI, § 2 of the Trumbull zoning regulations, which was adopted pursuant to this court's 1996 decision; Mutual Housing Assn. v. Planning Zoning Commission, supra, Superior Court, Docket No. 549155; provides that "[a]ny Housing Opportunity Development (HOD) constructed within the town shall be in full compliance with all of the requirements of this [HOD zone] regulation as well as all other applicable town ordinances and regulations." Thus, Vineyard correctly argues, the commission was bound by article XV, § 4 of the regulations, which states: "In reviewing site plans, the Commission shall take into consideration the purposes of these regulations, including the purposes of the applicable zoning district, the safety and convenience of the general public, and the maintenance of property values."
 A. Effect on Property Values
Vineyard alleges that "the Site Plan for the units approved does not maintain property values as required under Section 4 of CT Page 10157 Article XV of the Regulations in that Plaintiff has 21 units approved on its 6.5 acres and Mutual Housing has 44 units approved on 5.96 acres." (Appeal, ¶ 8(c).) Vineyard argues that the proposed development would adversely affect neighbors' property values. Vineyard supports its claim by referring to the statements made at the March 18, 1998 public hearing by a real estate broker and two abutting property owners. Dawn Chiapetta, the real estate broker handling the Stonebridge Estates properties, stated, "I can tell you hundreds of people have turned away from purchasing one of the best values in Trumbull because of the idea of what may be going in next door to it, and the fact that they feel it will be too crowded and congested, and do not feel that it would be consistent with the neighborhood, and was worried about their property values if they invested there. . . . We have drawn contracts [for sale of stonebridge real estate] where they call up and . . . ask about the parcel, and what's going on next door, and we've disclosed it when we're asked the questions, and so that people have full knowledge, and they walk away 99 percent of the time." (ROR, Item 4, p. 30.)
Robert Stumpeck, who lives at Stonebridge, state. at the March 18 hearing, "if I had know that this development was going in next door to me, I would never have invested my $260,000 in this house." (ROR, Item 4, p. 32.) Further, Aimee Gallucci, an abutting property owner, stated that one neighbor had arranged to sell his property, but that now the closing "hinges on whether this is approved or not." (ROR, Item 4, P. 33.)
MHA argues in its brief that Vineyard may not raise the property value issue in the site plan process because there is a conclusive presumption that a permitted use "does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." (Internal quotation marks omitted.) TLCDevelopment, Inc. v. Planning Zoning Commission, 215 Conn. 527,532-33, 577 A.2d 288 (1990).
"Protection of property values has long been an acknowledged purpose of zoning. . . . Thus, in a given case a zoning authority may have a legitimate public interest in protecting property values." Nichols v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 540477 (June 9, 1995, Mottolese, J.). ""Under § 8-30g the significance of protecting property values as a substantial public interest falls to a lower level in the hierarchy of CT Page 10158 importance. It is the view of this court that the legislature has already determined that an affordable housing development should not, solely by its nature, be considered harmful to property values.'" Mackowski v. Stratford Planning Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 334661 (October 22, 1998, Belinkie, J.), quotingPratt's Corner Limited Partnership v. Southington Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 508877 (June 21, 1993, Mottolese, J.) (9 Conn. L. Rptr. 291)
Although the record reveals fears that MHA's proposed development might decrease property values in the area, Vineyard has failed, under the terms and in the context of of § 8-30g, to demonstrate that the public interest in maintaining property values outweighs the public interest in creating affordable housing. See Notestine v. Farmington Town Plan ZoningCommission, supra, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 534253 (indicating that a non-applicant challenging an affordable housing decision must meet a higher burden because of § 8-30g). As a clear indication of what social ills the legislature was addressing in its affordable housing legislation, Chiapetta's testimony that buyers are turning away from Stonebridge "because of the idea of what may be going in next door" reveals only a pernicious fear of the unknown. (ROR, Item 4, p. 30.) Chiapetta has not indicated that she has had to decrease the sale price on the Stonebridge properties as a result of MHA's proposed development. Indeed, none of the statements of neighboring property owners explain how MHA's plan i-n particular decreases the value of properties in the area. Generalized fears about the impacts of affordable housing cannot outweigh the strong public interest expressed by the legislature in § 8-30g. See Mackowski v. StratfordPlanning Zoning Commission, supra, Superior Court, Docket No. 334661; Pratt's Corner Limited Partnership v. SouthingtonPlanning Zoning Commission, supra, 9 Conn. L. Rptr. 291. The Court finds, therefore, that Vineyard has failed to show that the commission erred by modifying and approving MHA's site plan in this respect.
 B. Traffic Safety and Parking
Vineyard alleges that "Mutual Housing's Site Plan fails to achieve the objective set forth in Section 1 of Article XV of the Regulations in that it does not protect Plaintiff's adjacent CT Page 10159 property through appropriate siting of the buildings, parking, landscaping and other site development features." (Appeal ¶ 8 (b).) Vineyard argues that the proposed development would be detrimental to highway safety, that the proposed driveway width is insufficient, and that the parking would be inadequate. Vineyard refers to the traffic study and testimony of David Spear in support of its argument. (See ROR, Items 4, pp. 21-22; 4b.)
Spear's report indicates that the location of the driveway creates a hazard because it is only 140 feet away from Stonebridge's driveway. (ROR, Item 4b.) Spear states that "[a] minimum of two hundred feet between the two drives is desirable." (ROR, Item 4b.) Spear further suggests that the parking spaces in front of building number one "are not deep enough to count." (ROR, Item 4b.) Spear concludes that "[d]ue to these parking limitations, there will be parking on the 24 foot wide street," creating a safety hazard for emergency vehicles. (ROR, Item 4b.)
Spear based his traffic study on MHA's original site plan, (see ROR, Items 1c; 4b.) but the revised plan did not make any alterations in response to concerns about the space between the two driveways or the adequacy of parking. (See ROR, Items 4a; 9; 9a.)
MHA argues that Vineyard may not raise the traffic issue on appeal because there is a conclusive presumption that the permitted use "does not adversely affect the district and precludes further inquiry into its effect on traffic. . . ." (Internal quotation marks omitted.) TLC Development, Inc. v.Planning Zoning Commission, supra, 215 Conn. 532-33. MHA further argues that "in this case the HOD zone was specifically passed for this parcel and traffic issues were thoroughly discussed in relation to that zone change. Therefore, all traffic issues were eliminated by the court's ruling in favor of the HOD zone change." (MHA Brief, p. 13.) MHA also argues that the parking issue was "addressed by the Court in the original appeal," so that "Vineyard may not attack that regulation in this site plan approval process." (MHA Brief, p. 14.)
"The impact of development on traffic and area roads is a legitimate concern affecting the safety and general welfare of the public." Nizza v. Andover Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain, Docket No. 526193 (August 4, 1994, Leheny, J.) However, for Vineyard's appeal to succeed on this ground, the public interest in traffic CT Page 10160 safety must also outweigh the need for affordable housing under § 8-30g. "[T]he requirement that a traffic intersection adhere to optimal rather than minimal acceptable standards is not a substantial public interest which a zoning commission is entitled to protect under [§ 18-30g (c)(2)." Old FarmsCrossing Associates Ltd. Partnership v. Planning ZoningCommission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 547862 (June 6, 1996, Mottolese, J.) (2 Conn. Ops. 730).
Here, the town engineer did not object to the distance between the Stonebridge and MHA driveways. (See ROR, Item 4a.) Spear's report stated only that "[a] minimum of two hundred feet between the two driveways is desirable." (ROR, Item 4b.) Thus, it is obvious that Spear did not claim that two hundred feet was the minimum distance allowed between driveways under the regulations. Instead, he fixed a "desirable" distance between the drives. The Court holds that the commission did not abuse its discretion by approving the site plan despite Spear's report.
Similarly, on the issue of the adequacy of parking, Spear concluded, without reference to the regulations, that the parking spaces in front of building number one "are not deep enough to count." (ROR, Item 4b.) Again, the town engineer did not raise concerns about the adequacy or size of the parking spaces in the site plan. (See ROR, Item 4a.) As with the traffic concerns, the commission's duty was not to impose optimal standards, but instead to assure that the parking met the minimal acceptable standards of the regulations. See Old Farms Crossing AssociatesLtd. Partnership v. Planning Zoning Commission, supra, Superior Court, Docket No. 547862. It is found, therefore, that the commission acted legally and within its discretion when. it approved the MHA site plan despite Spear's report that certain parking spaces were, in his opinion, too small.
 C. Adequacy of the Turn-around
Vineyard alleges that "the approved Site Plan still does not provide safe, adequate and convenient vehicular traffic within the site for delivery trucks and fire apparatus to negotiate the turnaround on the Plan as required under Section 4 of Article XV of the Regulations." (Appeal, ¶ 8(d).)
Vineyard argues that the turn-around in the site plan would be inadequate for larger vehicles. In support, Vineyard refers CT Page 10161 again to Spear's traffic study and testimony. Spear concluded that "[t]he proposed cul-de-sac was inadequate," suggesting that "[a] 40 to 45 foot radius is needed." (ROR, Item 4b.)
Town engineer Brian Smith also assessed the viability of the proposed plan. (See ROR, Item 4a.) He reported that "[t]he turn-around near building No. 4 should be extended as shown on [his] attached sketch. This will increase the area for vehicle maneuverability." (ROR, Item 4a.) Further, he suggested that "[t]he island in this turn-around should be removed. In a turning area this size, the island will become an obstruction for larger vehicles." (ROR, Item 4a.) MHA conformed its site plan to Smith's recommendations before resubmitting its plan. (See ROR, Item 9a, Drawing SES.)
MHA argues that it "demonstrated compliance of its cul de-sac turning radii with Town standards and the Town Engineer confirmed this fact." (MHA Brief, p. 15.)
At the July 1, 1998 hearing, Halt McChord, the engineer hired by MHA, stated that "our feeling and our approach on the design of the project was this is a spur off the overall project. We tried to keep it residential in nature; residential in size. That would be the typical turn-around that you would see at a front house, at a single family house. . . . By doing this, removing the island, we can support larger vehicles but again, we would say that this area is off-line. We do have a loop system within the site so that is why we approached it in that fashion; did not create a much bigger turn-around." (ROR, Item 11, p. 5.)
This court stated, in its decision on the zone change appeal, that "[i]f the fully engineered site plan does not provide sufficient turning radii for all emergency vehicle[s], then the town would be justified in denying a building permit." MutualHousing Assn. v. Planning Zoning Commission, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 549155 (August 12, 1996, Koletsky, J.). Here, however, the town engineer, whom the commission was entitled to believe, concluded that the modified turn-around is adequate. Vineyard's argument that the turn-around is inadequate is based solely on Spear's assessment of the unmodified cul-de-sac design. (See ROR, Items 4b, 1c.) It is found that the commission did not abuse its discretion when it approved a site plan that modified the turnaround to comply with the recommendations of the town engineer. CT Page 10162
 D. Setback Distance
Vineyard alleges that the site plan "fails to achieve the objective set forth in Section 1 of Article XV of the Regulations in that it does not protect plaintiff's adjacent property through appropriate siting of the buildings, parking, landscaping and other site development features." (Appeal, ¶ 8(b).) Specifically, Vineyard argues in its brief that the setbacks from neighbors' property are unreasonable and that the recreational areas provided for children and adults are inadequate. Vineyard supports its argument by reference to the statements of Martin Stauer, the architect of Stonebridge Estates, at the July 1, 1998 hearing.
Stauer stated that "[b] ecause of the density of Mutual's project, a 25' setback is an insufficient buffer between their two large proposed buildings, parallel to the common lot line between Stonebridge Estates and Mutual Housing. . . . A minimum 50' should be the setback with heavily planted screening on all the property lines."
MHA argues that "[t]he setback in question is a feature of the HOD zone regulation, and is not challengeable by Vineyard, especially since MHA showed its compliance with the 25 foot requirement." (MHA Brief, p. 14.)
The HOD regulation requires only a twenty-five foot setback. (ROR, Item 16, Zoning Regulations, Art. XVI,. § 9.) Thus that setback, as a feature of the HOD Zone, may not be challenged now that the zone change has been granted. The setback measurements were, indeed, challenged before this court when this court reviewed the commission's decision on the application to create the HOD Zone. Mutual Housing Assn. v. Planning ZoningCommission, supra, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 549155. The matter of setbacks was resolved at that time and now, at the site plan and special permit stage, the commission is bound to approve the application if it "satisfies the standards set forth in the regulations and the statutes." West Hartford InterfaithCoalition, Inc. v. Town Council, supra, 228 Conn. 505-06.
Furthermore, even if this court were to reach the issue of whether Vineyard has demonstrated, by sufficient evidence, that the proposed plan affects a substantial public interest in the CT Page 10163 setback measurements that outweighs the need for affordable housing; General Statutes § 8-30g (c)(1)(B) — (C); this court must presume that a plan complying with the regulations "does not adversely affect the district." TLC Development, Inc.v. Planning Zoning Commission, supra, 215 Conn. 532-33. Vineyard of course would carry the burden of proof on this matter. It is the Court's holding that Spear's conclusion that the original design was inadequate does not establish the existence of a substantial public interest in health, safety or any other matter entrusted to the commission that outweighs the need for affordable housing.
 VI. CONCLUSION
For the foregoing reasons, Vineyard's appeal should be and is dismissed.
Koletsky, J.